Case 1635483, Argonaut v. Danoff. Sorry. That's correct, Your Honor. Good morning. My name is Duane Clifford, representing the appellant Danoff in this case. This appeal involves a question of insurance coverage and the circumstances under which a lost payee may recover for damage to a building. And I think what Judge McShane got wrong in this case is there are two issues that have to be decided. He decided there had to be a covered loss from the named insured in order for the lost payee to recover. And a little quick primer on insurance is the named – No, but as I understand it, maybe I need the primer, but if I read Transportation Equipment Rentals v. Oregon Autos, it says that under Oregon law, the lost payee cannot recover in their own right but must rest any claim to payment on whether the insured has a sustained loss. Correct, Your Honor. So in this case, the only way that your client could have received payment was if the insured had a sustained loss. That's correct, Your Honor. So in this case, as I understand it, then the only way Danoff could have received anything was if C&K Market had a loss. That's correct, Your Honor. Okay, so if that's correct, you correctly posed the two questions in this case. Let me jump to the second one rather than the first. Sure. Is there an Oregon case that says that a lost payee can sue, directly sue the insurance company when the claimant – when no claim has been made by the insured? Sure. I think the two cases in this appeal, the two main cases, both armrest and transportation equipment, both are lost payees suing without the presence or the involvement of the named insured. But with the assignment from the insured, are they not of its claims? It's not an assignment from the insured. The lost payee – No, but I'm saying in those cases, didn't the plaintiffs have some – weren't they standing in the shoes of the insured? No, Your Honor. Not in the sense of an assignment. What they do is they stand in the shoes of the insured under the law. As you pointed out correctly – Well, they can't get anything unless the insured has sustained a loss. Yes, sir. And let me – But what if the insured comes in and says, I don't have a loss? If the insured comes in and says, I don't have a loss, it's irrelevant under the coverage here. And that's what this – Why is it irrelevant? Because there are two steps. Number one is there has to be covered damage to property. And in this case, the grocery store was clearly a covered property, and there was physical damage to the store. Next, the question then becomes, well, if there's damage, there's a promise to pay that damage. And the question is to whom? That's where you get, I think, to the conflation – And in this particular case, your client might be the one to whom paid. My problem comes, again, to what's the damage? Yes, sir. Let me tell you what the damage is. I mean, it doesn't seem to me – And this is where I'm going to push you just a little bit. Why is there any damage here when C&K Markets says there is no loss? Because it's a conflation of two different kinds of losses, Your Honor. What C&K suffered by damaging its own building was, first of all, a loss in the building, and it enjoyed that as a leasehold interest. As the lessor, it now has a building that's worth less. And the second part, and I think more important for this appeal, is that C&K, when it damaged the building under the lease, at the same time incurred liability, its own loss, to repair those damages that it did on the way out of the store. If it incurred liability, it seems to me that Danoff then would have a claim against C&K and Danoff went into the bankruptcy court and settled any claim it had with C&K in the bankruptcy court. Yes, Your Honor, that's true. And if that happened, and I don't even know what the settlement was, how can I say there's a loss? There's still a loss because under the – I guess it goes back to what I'm trying to get at is the conflation of two kinds of loss. Because the problem that I have is this. If Danoff goes into the bankruptcy and says to C&K, I have a loss, and C&K make a settlement of those claims, at that point C&K doesn't have any loss anymore. Neither does Danoff. They have settled all of that. They've been paid out. They're through. So how would Danoff – C&K wouldn't have a loss. So therefore, Danoff wouldn't have a loss as the loss paid. Let me answer it this way. It's not under the policy language, and we always have to go back to that in these insurance coverage questions. I swear I'm going to. If you look, and I'll point you to ER 51, and the language of what triggers coverage under this policy and what Argonaut promised to pay for. It promised to pay for damage to the building. And let me read that to you. We will pay for direct physical loss or damage to covered property at the premises described in the declaration. So I take it your argument on coverage is that you think the policy covers damage that C&K did to the building. Yes, Your Honor, I do. Above wear and tear. Yes, sir. I mean, and I must admit, when you go through the language of the policy, it's a little obscure, but I've never heard in the past of a property damage policy that covered damage caused by the actions of the insured. Well, I think it's common. And, again, let me point you back to the language of the policy itself. No, I mean, I think you have a strong policy. I think you have an argument on the face of the policy that gives me some pause. I just must say I've done a lot of work in this area and I've never seen a property damage policy that covered damage that you did yourself. Just like if you crash your own car. You crash your own car, your insurance company will pay for it. I've seen lots of automobile policies that say that. No. If you accidentally burn down your house, you would also be entitled to coverage under your policy. And that's why, Your Honor, I would direct you to the language of the policy itself. The only relevant exclusion, after the first part that I read you about damage to covered property, would apply if the insured had been engaged in criminal or dishonest conduct. Since neither of those is present here, you're right that the policy is now triggered and coverage has to be paid. Let me ask you a different question. We all agree that you are — the damage you claim has to be damage that would be payable to C&K had it made a claim. Yes, sir. C&K went through a bankruptcy. Was this an asset of the bankruptcy estate? It was. I mean, I guess if it would have been an asset of the estate if C&K had made a claim and made it part of what that money would have been for the estate, I hesitate to say yes, though, because all that money under the lost payable clause, which explains why these unusual circumstances here, the insured didn't make a claim because all the money goes to damage. Here's what's troubling me, and it's not briefed. Both claims correctly get made into bankruptcy court initially. You go after C&K and you say, you owe me money. And you also go after — Argonaut files a claim into bankruptcy court and says, well, these guys are claiming that we owe them money, so we want — that arises out of the same transaction. We want to do that. And I think that money, that claim, is an asset of the bankruptcy estate. And you settle it. And the bankruptcy gets closed. And now we have that asset of the bankruptcy estate that you're, in effect, suing on. There's always two — let me answer it this way, Your Honor. How did you get — so let me ask the question in a sort of non-legal term. How did you get that asset? There are always two possible actions. We got the asset because Danoff, as a lost payee under the policy outside of the bankruptcy, can recover on the policy. Apart from whatever C&K was doing, because it stands as an appointee, the policy can sue, just like in transportation equipment and — So could C&K bring the suit? Pardon me? Could C&K, after everything was done, have — with the bankruptcy and your settlement, could C&K have brought a suit against the insurance company for damage to the property? Yes, Your Honor. It could have, because it suffered a loss. To answer your question about — Did it retain that asset out of the bankruptcy? Well, what they did — they've closed all of the assets out of the bankruptcy. That's now closed. They could have brought a claim during the bankruptcy and asserted a claim directly against Argonaut. I thought that's the question you were asking. Right. And they didn't. And they didn't. Right. And bankruptcy was a Chapter 7 or something? Let me tell you why that's important, Your Honor, is because there's nothing in the policy, under the terms of the policy, which is what Danoff is suing for. It's not under the bankruptcy. It's not a claim out of C&K that they own. Danoff, as a loss appointee, is paying — excuse me, as an appointee of the named insured, is suing for that, for the damage to the building. It doesn't require — and you see nothing in that language that I read you. We will pay for direct physical loss or damage — No, I understand your — — incurred by the named insured or paid first by the named insured. I understand your coverage argument. I'm trying to figure out how it is that you have a standing to sue, if you will. The couple — I mean, the couple of Oregon cases basically turn on insurable interest, and they — I think you have an insurable interest here. And both of those cases, to answer your question about standing, Your Honor, say that the loss payee stands in the shoes, in a way, as the appointee of the named insured. And both Transportation Equipment and Armbrust were both cases brought without the claim filed by the named insured. Right. But they both say you must claim in the right of the insured. And I'm trying to figure out whether the insured still had a right to claim after the bankruptcy ended. Not something that's briefed, but that's why I'm asking. I think that — to get back to the original question about the loss, the loss here means that C&K had a liability under this policy. It doesn't mean who paid it. It means that they incurred liability, and that goes to the insurable interest rule. Both of those cases didn't require the named insured pay anything first or seek a claim. Both of those cases just said the named insured has to have an insurable interest, has to have something at stake. In that case, that's true with C&K. That's the end of the argument. No, I understand that argument. What I'm worrying about is this. There was a bankruptcy. You settled your claims against C&K in the bankruptcy. It's hard for me to see how after that C&K retained the right, which is the derivative right you're claiming, to sue the insurance company outside the bankruptcy. There's no release in the bankruptcy in the direct claims against C&K for the insurance company. So we still reserve our rights and are pursuing our rights against the insurance company. But in their stead, if you will. Well, only as an appointee of them. That's how you get standing. Right. I guess maybe that — I see where you're going, Justice Breyer. Yeah. It isn't a case where there was an assignee and now by wiping out a claims against C&K, ours are also wiped out. As an appointee, you step into their shoes by virtue of the policy, not by an assignment that C&K could destroy in the bankruptcy. We have our own rights under the policy. Okay. I understand your argument. Counsel. Thank you, Judge.  He's gone over. Your turn. May it please the Court. Bill Earl for Respondent Argonaut. Excuse me. So oftentimes on these cases, if I want to get to the nub of the case, I go right to the reply brief. And here, if you look at the conclusion in the reply brief at page 13, it does lay that out nicely. C&K's contractual liability to Danoff to repair the damages that were apparently caused by C&K to the building. The argument is that those are direct physical loss to covered property owners. So why aren't they under the policy? The language that your colleague read to us seems to cover that. Well. And I understand there's a wear and tear exception, but they allege more than wear and tear here. So they do indeed. So where's the exclusion? The policy says that we cover all damages to the covered property and then has a bunch of exclusions, which none of which seem to be directly on point. Why isn't? If C&K were here today claiming under the policy, why would it fail? Well, that's a very good question. First of all, we'd say, okay, C&K, what's your loss? All right? So that's the issue. It's not Danoff's loss. It's C&K's loss. And so C&K has to suffer direct physical loss of or damage to the property. Right. What does the policy say C&K must suffer direct physical loss? Okay. That's — if it says here, we will pay for direct physical loss of or damage to covered property. Now, I agree with you that that doesn't say to whom or of whom. But what I would say is it is presupposed that it has to be suffered by someone and that someone has to be the named insured. And I'd say that for a couple of different reasons, and I want to talk about both of them, because you've gotten to the nub of it. In Hoffman v. Frederick James, which is the — that's the way you interpret policies in Oregon, you have to look at the completing — the competing plausible interpretations and look — and they have to withstand scrutiny both in — examine in the particular context in which they're used and as a whole. So first of all, what sense does it make to say physical loss or damage to property — I mean, first of all, this is a good example right here. The property itself, did it suffer — did the building suffer a loss when I take out — if I take out a refrigerator? They're saying we damaged. They took out stuff out of the building, forget the refrigerator, and damaged the building just the same way that surely it would have been covered had some vandal come inside and done that, right? But, see, that's the key. It's the — the question is, is there damage to the named insured? So if I'm the — But if the named insured is a lessee and there's a loss payee because the loss payee owns the building, I don't care if the wall gets knocked down as long as it doesn't affect my operations. So that's why there's a loss payee, isn't there? No. That's why you get your own — if you're the owner, you get your own insurance policy. The — here, a loss payee is a — totally, you get to be on the settlement check. That's what you are. I mean, I understand. No, I understand. I understand, but that's a different proposition than the one you were just urging, and that's why I want to explore that. The proposition you were urging is that the loss — the insured itself must suffer some sort of loss. Exactly right. But when you're covering — when the insured says, I'm buying an insurance company, I'm buying an insurance policy on a property, and the property is damaged, and the insurer is only leasing the property rather than owning it, isn't there a loss? It depends on the case, right? Because if — Well, no. Excuse me. Because it's a — it's a loss to the named insured. If something came and destroyed the entire building, the insured would face a loss. But if the insured, in this case — So I've got insurance. Let me give you an example here, so don't keep changing them on me for a second. Let's assume I have an insurance policy on a property that I lease. It covers damage to the property. A car crashes into the front of the property, damages the left wall. I don't care. I continue on with my business happily until the — you know, do I have a loss covered by the — do I have a loss covered by this policy? Most likely, yes. Okay. So? Yeah. You would have a loss? Well, you may suffer damage, a loss to the property, if you have to go and fix that. No, no, no. You have a loss. No, you do. Don't change my hypothetical. I don't. I'm the lessee. And I say — Look, that's correct. The wall's been damaged. I don't care. Yeah. I'll just go on and continue to sell tomatoes out of this story. I don't care about that wall. And I'm not ever going to fix it. Do I have a loss? I don't think you have a loss, do you? Well, you don't have a loss if you say, I'm never going to fix it. Because, for example, if I'm in my house, right, I may take out a wall to enlarge my kitchen. Well, in some sense, the building, that's what they're arguing, that the building is damaged. Well, in some metaphysical sense, I don't know. But it doesn't make sense when it comes to an insurance policy. It's not physical. It's not, I haven't suffered a loss as the named insurer. Let's go back to my example again and let's see if we can just work it through. The car crashes into the side of the building. I'm the lessee. And I say, well, it really doesn't affect my operations, so I don't care. The landlord of the building who owns it says, I want you to make a claim for that because I'm going to have to fix the building and you're contractually obligated to me to do so. If they make a claim under that circumstance, is it covered by the policy? Well, they would have to go in, the insured would have to go and say, I have suffered a loss by that, and say it is worth X amount. Okay. Well, what is this loss? But that's not what happened here. What is his loss? Can his loss be his contractual obligation to the? No. That's not the direct, again, that's the argument that they're making. That's your position. Your position is that the contractual obligation to the landlord is not a covered loss. Exactly. It is not. And in fact, if we go to the reply brief, all right, and so they say that C&K's potential liability is direct physical loss. Well, first of all, that sounds a little odd. I don't know why that would be. So let's see, well, what authority do they have for that? And that authority, that argument is listed in page 8 of the reply. And it says, this, they talk about the hold harmless promise by C&K. That establishes both C&K's insurable interest in the store and its loss. And as authority, they quote the following from Byrd v. Century Manufacturers. It is sufficient to constitute an insurable interest in property that the insured is so situated with reference that he would be liable to the loss. Right? Well, that's the problem right there, because insurable interest and direct physical loss are two different things. So it doesn't right? So you don't doubt that C&K had an insurable interest in the property, do you? I do not doubt that. Correct. Or that the loss payee had an insurable interest. Exactly correct. But that's, but both things are needed. And the case law in the three cases that we talk about from Oregon, which have discussed these loss payees, they make clear that's true. You need both. Can I ask you a different question? Yes. The one I was obsessing with, with your colleague. Can, assume that this is a covered loss, just for the purposes of this question, could, can Danoff sue directly to recover on that covered loss? I think, well, first of all, we didn't argue to the contrary. I understand. That's why there's no good answers for me in the briefs. That's why I'm asking. Yeah. But I believe, I believe they could as a matter of standing. But what it does show you is, in this case, Danoff, that C&K did not suffer a loss, because typically if they suffer a loss, they do make a claim. But, but again, it's a, it's a question of whether they suffered the loss. But under your hypothetical, they did. Isn't the loss that they suffered, given what happened in this case, any amount that they paid in settlement to Danoff? Well, that's, that's a liability risk that's covered under a liability clause. Yeah. Whether or not that's a covered, covered, covered loss, I don't know. But this isn't a direct, yeah, it's not a direct physical loss. And so what they're trying to do is use, they realize they need a direct physical loss. And they say, well, that direct physical loss is the contractual liability. Well, that's a different thing. That's not a direct physical loss. That's a contractual liability. That's what you settled when you settled your liability claim. See? It seems then that what you're arguing is, if I boil it down, that the only loss to which Danoff is, we appropriately can recover, is the loss to C&K. And that any tortious loss, or if you will, even contractual loss, outside of just the loss to the building, is covered by other insurance. Yes. Correct. I understand. Yes. Okay. And I'm out of time. Is there anything else that you want to ask me before I go? Judge Fischer. Your argonaut did not dispute that there was damage to the building, right? No, I think they do dispute that in the sense, again, it doesn't make sense when you say damage to the building. Well, I was reading from the denial letter of March 18, 2014, and it says, this is Supplemental ER, page 38. And it says, we have carefully reviewed your policy, this is to C&K, and we don't find a lack of liability coverage. And they say, in speaking to Kevin Crumley, C&K market personnel had full knowledge of the damage being done to the building. Mr. Crumley agreed that he knew the operation of moving equipment to and from with a pallet jack was causing damage to the building, front glass and so on. Mr. Crumley also stated he was aware of the emergency brake on the front doors, which also causes damage with long-term use. That's what it says. I get that. What I would say is, in that letter, they were speaking somewhat loosely, and but Hardly loosely, they were denying the claim. They were, that's correct. They were denying the claim. But, and certainly, there was some damage, property damage, that what we would call lost the wear and tear. And, but that's, that is the excluded part of it. But there was damage beyond the wear and tear. There was damage in that now there's big holes in the place where the equipment is not there. That's not wear and tear. That's not. That's not wear and tear. But it's also, it's not really damage. It's sort of like if I take it out. Of course it's damage. It may not be a loss to C&K. That's what you were arguing before. Well, it isn't. Surely there was damage to the property. Well, I mean, in a sense, if I, again, I take out my refrigerator out of my, and I sell it, I've got a big hole where the refrigerator was. No, we're not talking about an empty space. We're talking about a hole in the floor. I mean, look, you may well not have to cover this, but the notion that the property wasn't damaged by C&K strikes me as an uphill battle for you. And I don't need that battle and I won't fight it, but. Thank you. Thank you. We used all your time. Do you want a minute? I think really, as I'm listening to this, I'm just dying to get up here and explain about the loss. The loss in that sense from the quote that you gave, Judge Smith, about, from Armbrust, about what a loss means always goes back to insurable interest. There isn't some kind of loss that has to be paid out. It isn't some kind of loss that C&K has to incur in some way because it's not in the policy. All it means is that you have the liability in some way under Byrd and the other cases in an insurable interest. It's to prevent wagering. Both Armbrust and transportation equipment are insurable interest cases. They didn't have to show that they named insured in either of those cases paid anything or suffered a loss. And I think where Mr. Ehrler's rules. In those cases, the court found no insurable interest. That's true. It never got to those issues. The difficulty is there, and I'm dealing with two nos to coverage. But both of those say the named insured was essentially a stranger to the property. And I think where Mr. Ehrler went a little off the rails is by saying that you have to have covered, you have to have direct physical loss to C&K. That doesn't make any sense. It's an entity. You have direct physical loss to a building, and the building was unquestionably damaged. That's how you trigger coverage, and that's where you've got to pay. And you think the policy covers damage caused by the intentional acts of C&K? It does, Your Honor, because there's no exclusion for instance. Because there's no exclusion for them. Yes, sir. I thank you for the extra minute. Thank you. Thank you. Case 1635483 is submitted, and we'll move to 1635943.
judges: Fisher, N.R. Smith, Hurwitz